Dr. E. T. York Chancellor State University System Tallahassee
QUESTIONS:
1. Must a registered nurse carry out medication and treatment orders given her by a physician's assistant?
2. Has a nurse the responsibility to inquire into the delegation of authority to the physician's assistant each time she receives a drug or treatment order from a physician's assistant?
3. May a nurse refuse to carry out an order she receives from a physician's assistant which she believes or has reason to believe is contrary to or exceeds his delegated authority?
SUMMARY:
Nurses administering medication or drug treatment orders executed by a certified physician's assistant under the supervision of, or at the direction of, a licensed physician to whom such physician's assistant is assigned are not violating any provision of the state nursing law, Ch. 464, F. S. Nurses are required to carry out such medication or drug treatment orders without inquiry as to the delegated authority of such physician's assistant on every such order each time he or she receives one. All such medication or drug treatment orders should be routinely administered or performed by nurses as directed, to prevent arbitrary or capricious reasons for failure to administer such orders and impairment or nullification of the vital functions of the physician's assistants pursuant to s. 458.135, F. S., and nurses may not refuse to carry out such orders.
As these questions are interrelated, they will be answered together.
An overview of s. 458.135, F. S., as to the role of the physician's assistant is appropriate in answering your questions.
The Legislature, by enactment of s. 458.135, F. S., sought to alleviate the problem of insufficient and maldistributed health care services in this state. A new category of health care manpower, the physician's assistants, was established, a designation given to qualified medical personnel trained to perform medical services and assist licensed physicians in providing medical services to patients under their care. The definition as provided in s. 458.135(2)(d) is:
 `Physician assistant' means a person who is a graduate of an approved program or its equivalent and is approved by the board to perform medical services under the supervision of a physician or group of physicians approved by the board to supervise such assistant. (Emphasis supplied.)
Section 458.135(3), F. S., explicates that, notwithstanding any other provision of law, a physician's assistant may performmedical services when such services are rendered under the supervision of a licensed medical practitioner or group of physicians approved by the State Board of Medical Examiners in the specialty area or areas for which the physician's assistants are trained or experienced. Also see s. 458.13(4), F. S., providing that the definitional section relating to the practice of medicine shall not be construed to prohibit services rendered by a trained physician's assistant, and Rule 21M-17.01(5), F.A.C., in part defining a physician's assistant as one who performs tasks or a combination of tasks traditionally performed by a physician, including medical treatment.
Also included with the statute is a definition of supervision:
 `Supervision' means responsible supervision and control with the licensed physician assuming legal liability for the services rendered by the physician's assistant. Except in cases of emergency, supervision shall require the easy availability or physical presence of the licensed physician for consultation and direction of the actions of the physician's assistant. The Board of Medical Examiners shall further establish rules and regulations as to what constitutes responsible supervision of the physician's assistant. [Section 458.135(2)(e), F. S.; emphasis supplied.]
It is important to note that the foregoing placed legal liability and responsibility for patients' medical services upon licensed physicians approved by the Board of Medical Examiners to supervise physicians' assistants. See s. 458.135(2)(d), (6), and (9), F. S. Section 458.135(14), F. S., further provides, `all physicians or physician groups utilizing physicians' assistants shall be liable for any acts or omissions of physicians' assistants while acting under their supervision and control.' Section 458.135(2)(e), F. S., directs the Board of Medical Examiners to establish rules and regulations as to responsible supervision of physicians' assistants. Section 458.135(5)(d), F. S., further provides:
 The board shall adopt and publish standards to insure that such programs operate in a manner which does not endanger the health and welfare of the patients who receive services within the scope of the program. The board shall review the quality of the curriculum, faculty, and facilities of such programs, issue certificates of approval, and take whatever other action is necessary to determine that the purposes of this section are being met.
It is evident from the foregoing sections that the Legislature intended that the physician's assistant play a major role in delivery of health care or medical services under the prescribed supervision and consistent with the patient health and welfare.
Section 458.135(3), F. S., enumerates the places where certified physicians' assistants may perform medical services. Section 458.135(3)(c) specifically denotes a hospital, such as Shands Teaching Hospital, where the supervising physician to whom the physician's assistant is assigned is a member of the staff, as a place where medical services may be performed by certified physicians' assistants.
In reference to your question as to whether s. 464.021(2)(a)2., F. S., of the nursing chapter conflicts with s. 458.135, F. S., s. 464.021(2)(a)(2). provides that the practice of professional nursing includes: `the administration of medications and treatments as prescribed or authorized by a person licensed in this state to prescribe such medications and treatments.' You also indicated by your letter that the nursing staff at the hospital was apprehensive in administering medication or drug treatment orders executed by a physician's assistant; that they believe to administer such order would be in violation of s. 464.021(2)(a)2. Therefore, s. 464.021(2)(a)2. hindered performance contemplated and expected by the Legislature in enacting s. 458.135, F. S.
In my opinion s. 464.021(2)(a)2., F. S., in no way prevents a nurse from administering a medication or drug treatment order from a certified phhsician's assistant. The section specifically operates as the definitional statute of the practice of nursing and has nothing to do with what constitutes the practice of medicine and the performance of medical services or the regulation thereof by the state through the Board of Medical Examiners. Indeed, s. 464.25, F. S. (1976 Supp.), specifies that nothing in Ch. 464, F. S., shall be construed to confer the authority to practice medicine. It does not indicate that a medication or drug treatment order has to be handed directly from a licensed physician into a registered nurse's hand in order to be administered. The important words to note from s. 464.021(2)(a)2. are `as prescribed or authorized by a person licensed in this state. . . .' If a certified physician's assistant is performing such a task or executing medication or drug treatment order forms under supervision authorized or directed by the supervising licensed physician, administering of that medication or drug treatment order by the registered nurse does not violate s. 464.021(2)(a)2.
The nursing staff should be informed that the supervising licensed physician to whom the physician's assistant has been assigned has the legal liability and responsibility for medical services rendered by such physician's assistant. Medication or drug treatment orders executed by a certified physician's assistant under the supervision of or at the direction of a licensed physician to whom such assistant is assigned are required to be carried out without inquiry into the delegation of authority to the physician's assistant as to every order each time he or she receives one. It is also my opinion that any medication or drug treatment order issued by a certified physician's assistant, authorized or directed by the supervising physician, should be routinely administered or performed by the nursing staff, and nursing personnel may not refuse to carry out such orders. To conclude otherwise could lead to arbitrary or capricious reasons for failure to administer or carry out medication or drug treatment orders authorized by the prescribing physician and, therefore, impair or impede and nullify a vital function of the physician's assistants under the Medical Practice Act.
Prepared by: Walter Kelly Assistant Attorney General